698 F.2d 390
 Helen EBEL, Appellant,
v.
CITY OF CORONA, a municipal corporation; William Ketteman,
Planning Director of the City of Corona; and B.
Talbert, Chief of Police of the City of
Corona, Appellees.
 No. 82-5056.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 1, 1982.
Decided Feb. 1, 1983.
 
 Roger Jon Diamond, Hecht, Diamond & Greenfield, Pacific Palisades, Cal., for appellant.
 Meredith Jury, Best, Best & Krieger, Riverside, Cal., for appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, HUG and BOOCHEVER, Circuit Judges.
 GOODWIN, Circuit Judge.
 
 
 1
 Helen Ebel appeals from the denial of a preliminary injunction to restrain the City of Corona from closing an adult bookstore. We reverse and remand.
 
 
 2
 Ebel opened her bookstore arcade in Corona, California in July 1981. The Corona City Council adopted ordinances on September 16, 1981, defining "sex oriented material"[1] and restricting sellers of it to certain commercial zones. The ordinances prohibit any "seller of sex-oriented material"[2] from operating on any lot directly abutting a residentially zoned lot or within 750 feet of: any school primarily attended by minors; a church which conducts religious or educational classes for minors; a public park, neighborhood center, community center or recreational facility frequented by minors. The ordinances also forbid operation within 500 feet of any other seller of sex-oriented material. The ordinances granted an amortization period for nonconforming uses. On September 30, 1981, the City Manager informed Ebel that she would have to move her adult bookstore.
 
 
 3
 On December 14, 1981, Ebel filed a complaint against the City of Corona, et al. alleging that the zoning ordinance violated her free speech, due process, just compensation and equal protection rights under the First and Fourteenth Amendments of the United States Constitution. Ebel moved for a preliminary injunction. Following a hearing, the district court denied the motion for preliminary injunction.
 
 
 4
 In its findings of fact and conclusions of law, the district court found that alternative sites for Ebel's store exist in the City of Corona, that the Corona zoning ordinance did not operate as an outright prohibition of adult bookstores, that Ebel had not proven that the availability of adult material in Corona is greatly restricted by the ordinance, and that Ebel had failed to carry her burden of demonstrating that the Corona zoning code is a ban on adult bookstores in Corona. The court therefore held that Ebel had failed to prove a substantial likelihood of success on the merits of her claim. The district court also held that she had not met her burden of proof that there would be any irreparable harm to her because she had failed to prove that she could not relocate her business.
 
 
 5
 On February 25, 1982, the motions panel of this court granted a temporary injunction pending appeal. This order restrained officials of Corona from enforcing the zoning ordinance. On May 3, 1982, this court denied the city's motion to vacate that injunction, and calendared the case for argument.
 
 
 6
 A preliminary injunction should be issued "upon a clear showing of either (1) probable success on the merits and possible irreparable injury or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir.1976) (emphasis in original), citing, Gresham v. Chambers, 501 F.2d 687, 691 (2nd Cir.1974).
 
 I.
 
 7
 There are sufficiently serious questions going to the merits to make them a fair ground for litigation.
 
 
 8
 Federal courts apply strict scrutiny to statutes that impinge on First Amendment rights. Harper v. Virginia Board of Elections, 383 U.S. 663, 670, 86 S.Ct. 1079, 1083, 16 L.Ed.2d 169 (1966). Laws against unprotected activities that incidentally result in limitation of free expression must be justified by compelling state interests. Young v. American Mini Theaters, 427 U.S. 50, 56, 96 S.Ct. 2440, 2445, 49 L.Ed.2d 310 (1976).
 
 
 9
 Mini Theaters is the leading case concerning zoning of sex-oriented businesses and the First Amendment. In 1962 Detroit adopted an ordinance regulating the locations of adult bookstores, cabarets, bars, hotels and motels, and other uses. In 1972 Detroit added adult theaters and provided that they could not be located within 1000 feet of any two other "regulated uses" or within 500 feet of a residential area. The adult theater ordinance specifically identified the content of movies that would be considered "adult" in terms almost identical to the Corona zoning ordinance. The Court found that the Detroit Common Council's purpose in regulating adult movie theaters was to control their secondary effects on neighborhood deterioration and crime. The Court held that the city thus had shown a sufficiently significant government interest to justify regulation of the time, place and manner of speech protected by the First Amendment.
 
 
 10
 Justice Stevens also wrote that the Detroit ordinance did not attempt to eliminate adult theaters from the city:
 
 
 11
 "The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech. Here, however, the district court specifically found that '[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriads of locations within the City of Detroit which must be over 1000 feet from existing regulated establishments. This burden upon First Amendment rights is slight.' " (citation omitted). 427 U.S. 50, 71-72, 96 S.Ct. 2440, 2452-2453, 49 L.Ed.2d 310.
 
 
 12
 The facts of Mini Theaters differ in several respects from the facts of the present case. The Detroit ordinance was aimed at the concentration of adult theaters and had the effect of dispersing them. At least 40 adult theaters that met the terms of the ordinance existed in Detroit. In Corona, a much smaller town, Ebel's bookstore is the only existing adult bookstore. Detroit's ordinance also contained a "grandfather clause" permitting existing facilities to continue. Corona's does not.
 
 
 13
 Ebel contends that the Corona City Council violated due process by enacting the ordinance without making adequate findings of fact to justify it. However, the city gave notice, held hearings, issued a report of the City Planning Commission, and gave reasons for its action in the preamble to the ordinance. Enactment of a zoning ordinance is a legislative act, Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 673-674, 96 S.Ct. 2358, 2362, 49 L.Ed.2d 132 (1976), Kuzinich v. County of Santa Clara, 689 F.2d 1345 (9th Cir.1982), and great latitude is given to legislative bodies in the procedures they may use in factfinding. The district court found no violation of due process. The court's holding on that point is free from error.
 
 
 14
 Ebel contends that the real purpose of the Corona ordinance is to harass and obstruct the exercise of her First Amendment rights. The record provides enough evidence in support of her claim to make the question one that does not lend itself to summary disposition. The claim presents fair ground for litigation.
 
 
 15
 Testimony at public hearings on the ordinances was specifically aimed against Ebel's adult bookstore. Ebel owns the only adult bookstore in Corona. The Chairman of the Planning Commission stated that under the ordinance the city would "remove the adult bookstore" after completion of the amortization period. A Planning Commissioner said he "would like to see the bookstore out of Corona." Zoning Ordinance 1617 specifically mentioned Ebel's adult bookstore in its preamble.
 
 
 16
 "[A] governmental regulation is sufficiently justified, despite its incidental impact upon First Amendment interests, 'if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on ... First Amendment freedoms is no greater than is essential to the furtherance of that interest.' " Young v. American Mini Theaters, 427 U.S. at 79-80, 96 S.Ct. at 2456-2457, Justice Powell concurring.
 
 
 17
 Purposeful governmental suppression of free expression is unconstitutional. Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
 
 
 18
 If, at trial, Ebel can demonstrate that the real purpose of the Corona ordinance was to run her adult bookstore out of town, then the ordinance would violate both equal protection (because it was aimed at Ebel) and the First Amendment (as a purposeful attempt to suppress protected expression). See Kuzinich v. County of Santa Clara, 689 F.2d 1345 (9th Cir.1982).
 
 II.
 
 19
 The hardships Ebel would face if the preliminary injunction were denied are much more serious than the temporary hardship the city would endure if the injunction were granted. If denied, Ebel's bookstore would be closed. She would have to bear the cost of relocation or lose her income. Because she asserts injury to her freedom of expression, the hardships are not merely monetary. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).
 
 
 20
 The city, on the other hand, has admitted at argument that it can point to no specific instances of harm from Ebel's bookstore remaining open pending trial on the merits.
 
 
 21
 The city's case will ultimately rest on proof of the likelihood of some harm that the ordinance was designed to prevent. At trial, the district court should make factual findings on the validity of the city's assertions of harm and then closely scrutinize the Corona ordinance's relationship to prevention of the alleged harms. Young v. American Mini Theaters, 427 U.S. at 56, n. 12, 96 S.Ct. at 2445, n. 12.
 
 
 22
 The tests for the issuance of a preliminary injunction have been met. The district court's order is vacated and the court is directed to issue the preliminary injunction pending trial on the merits.
 
 
 23
 Vacated and remanded.
 
 
 
 [1]
 Section 17.41.020 Definitions:
 "As used in this chapter, the following definitions shall apply:
 (a) 'Specified sexual activities' means:
 (1) human genitals in a state of sexual stimulation or arousal;
 (2) acts of human masturbation, actual or simulated sexual intercourse, genital union, sodomy, analingus, buggery, bestiality, coprophagy, coprophilia, cunnilingus, fellatio, necrophilia, pedarasty, pedophilia, or zooerasty;
 (3) fondling or other erotic touching of human genitals, pubic region, buttock or female breast;
 (b) 'Specified anatomical areas' means:
 (1) less than completely and opaquely covered: (a) mature human genitals, (b) mature human buttock, (c) mature human female breast below the top of the areola; and
 (2) human male genitals in a discernibly turgent state, even if completely and opaquely covered; ...."
 
 
 [2]
 "(c) 'Seller of Sex-Oriented Material' means any retail or wholesale establishment having as a substantial or significant portion of its stock in trade pictures, films, books, magazines and other printed materials which are substantially devoted to the depiction of 'specific sexual activities' or 'specified anatomical areas.' Also included in this definition are the following:
 (1) 'Adult Motion Picture Theater'--a facility used for presenting material in the form of motion picture film, video tape or other similar means which is substantially devoted to the depiction of 'specified sexual activities' or 'specified anatomical areas' for observation by persons therein.
 (2) 'Adult newsrack'--any coin-operated machine or device which dispenses material substantially devoted to the depiction of 'specified sexual activities' or "specified anatomical areas.' "