**Joseph TOVAR and Deborah Ann Moore, Plaintiffs-Appellants,**

v.

**C.G. BILLMEYER; Melvin Morgan; F.W. "Bill" Roskelley; John Evans; Donna Boe; Wayne Ellis; and The City of Pocatello, an Idaho Municipal Corporation, Defendants-Appellees.**

No. 82–3258.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1983.

Decided Dec. 15, 1983.

---

**3.** There was neither a denial of class certification nor a formal certification order under Fed. R.Civ.P. 23(c).

James A. Shiner, Tucson, Ariz., for plaintiffs-appellants.

L. Charles Johnson, Pocatello, Idaho, for defendants-appellees.

Before GOODWIN, WALLACE and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The City Council of Pocatello, Idaho made two zoning decisions that prevented plaintiffs from operating their adult theater and bookstore at a newly acquired site. Plaintiffs challenged the City's action in federal district court, and the district judge granted summary judgment for defendants. The question presented on appeal is whether summary judgment is proper in a case where the City's zoning decisions may have been motivated by a desire to suppress protected first amendment expression. We hold that summary judgment is inappropriate and reverse.

## FACTS

In 1972 plaintiffs Joseph Tovar and Deborah Ann Moore opened an adult bookstore and theater in a rented building at 135 South Main Street in downtown Pocatello, Idaho. The Pocatello zoning code provides that only those uses specifically mentioned in the permitted use list for each geographical zone are proper. No permitted use list for any geographical zone, including the Commercial Central zone where the theater and bookstore were located, mentioned movie theaters (other than drive-ins) as an allowable use. Nonetheless, plaintiffs obtained city building permits and licenses authorizing the operation of the theater and bookstore each year from 1972 through 1975.

In August 1975 plaintiffs learned that they would soon be evicted from their rented location at 135 South Main Street. Plaintiffs then purchased on August 28, 1975 another building as a home for the adult theater and bookstore. That building was located at 250 North Main Street, several blocks from plaintiffs' previous location and within the same Commercial Central zoning district.

Before plaintiffs had an opportunity to apply for the required city permits and licenses, the Pocatello City Council, without notice, held a special meeting on September 2, 1975. The meeting was attended by defendant Billmeyer, Pocatello's mayor, and defendants Morgan, Roskelley, Evans and Boe, all members of the City Council. Plaintiffs allege that the purpose of the meeting was to find a way to prevent the reopening of the adult theater. According to plaintiffs' version of the meeting, the City Council ordered the building inspector to deny a permit when plaintiffs applied for one. On September 10, 1975, Pocatello's building inspector, defendant Ellis, denied plaintiffs' request for a permit to operate the adult theater in the new building.

Plaintiffs also allege that, at its September 2nd meeting, the City Council for the first time adopted an interpretation of the term "amusement enterprises" in the zoning code. This term had always been in the code, which took effect in February 1969. Under the new interpretation of "amusement enterprises," indoor motion picture theaters would be allowed in the Commercial Highway zone, but not in the Commercial Central zone where plaintiffs' theater would be located. Plaintiffs argue that the only reason the Council adopted its interpretation of "amusement enterprises" was because the effort to exclude the adult theater from Pocatello could not have succeeded unless indoor theaters were allowed somewhere in the City. Plaintiffs contend that, in the absence of such an interpretation, the zoning code would be patently unconstitutional because it completely excluded indoor movie theaters as legitimate uses of property anywhere in Pocatello.

Following the building inspector's September 10th denial of the permit, plaintiffs

asked the Pocatello Board of Adjustments to grant a conditional use permit authorizing the adult theater's operation at the newly acquired site.[1] The Board held an extensive public hearing on the probable impact of an adult theater at the new location—including potential traffic and parking problems. On October 8, 1975, the Board of Adjustments voted to grant the conditional use permit for the adult theater[2] as requested by plaintiffs.

The Board's decision was quickly appealed to the City Council by the Pocatello Downtown Merchants Association. On October 23, 1975, less than two weeks before defendant council members Evans, Boe and Roskelley were to stand for reelection, the City Council held a public hearing and voted to reverse the Board of Adjustments' decision and deny the conditional use permit.

The City Council's refusal to grant the conditional use permit began a tangled series of protracted legal battles in both federal and state court. Plaintiffs first challenged the Council's decision in a state court suit filed in December 1975. In February 1976 the state court vacated the Council's decision because it was made after a public hearing where new evidence was considered rather than following a limited hearing reviewing only the evidence presented to the Board of Adjustments. The case was remanded to the City Council for further consideration. On March 18, 1976, the Council again voted to reverse the Board of Adjustments' decision. Plaintiffs did not appeal that ruling.

While the state court case was pending, plaintiffs brought the present action in district court seeking injunctive and declaratory relief as well as damages. The federal district judge decided to abstain because all of plaintiffs' claims, both state and federal, could be tried and heard in the state court proceeding. In response to this decision, plaintiffs filed a second state court suit in August 1976 seeking both monetary and injunctive relief. In December 1976, the second state action was dismissed by the Idaho state court primarily because plaintiffs' allegations could be decided in the first state court case, which was still pending at the time. The Idaho Supreme Court affirmed this dismissal. *Tovar v. Billmeyer,* 98 Idaho 891, 575 P.2d 489 (1978).

When the first state court case was finally concluded,[3] the federal district court dismissed plaintiffs' present action based on the abstention doctrine. We reversed that decision in *Tovar v. Billmeyer,* 609 F.2d 1291 (9th Cir.1980), because plaintiffs had not made an unreserved submission of all their federal claims to the state court and therefore could not be barred from returning to federal court with those claims.

After we remanded the case to federal district court, both plaintiffs and defendants moved for summary judgment. The district judge granted defendants' summary judgment motion. Plaintiffs now appeal that decision.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is proper only if there are no genuine issues of material fact in dispute. Fed.R.Civ.P. 56(c); *Peacock v. Duval,* 694 F.2d 644, 645 (9th Cir.1982); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 882 (9th Cir.1980). In reviewing a summary judgment, we view the evidence in a manner most favorable to the losing party. *Gaines v. Haughton,* 645 F.2d 761, 769 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).

---

1. Under the newly adopted interpretation of the zoning code, no such permit would have been required for a site located in the Commercial Highway zone.

2. The parties apparently agree with the opinion of the Pocatello City Attorney, expressed at the Board of Adjustments hearing, that the adult bookstore is a permitted use under the zoning ordinance.

3. The state court ultimately decided, as a matter of law, that the City Council had not acted arbitrarily or abused its discretion by interpreting "amusement enterprises" to include indoor motion picture theaters.

■ We have previously recognized that summary judgment is usually inappropriate in cases dealing with potentially unconstitutional motivations. *See, e.g., Peacock,* 694 F.2d at 647, 648; *Mabey v. Reagan,* 537 F.2d 1036, 1044 n. 9 (9th Cir.1976); *cf. Fonda v. Gray,* 707 F.2d 435, 438 (9th Cir.1983) (although "questions of intent" may not "be amenable to disposition on summary judgment," summary judgment was affirmed because the facts are "largely undisputed"). Because evidence concerning motive is almost always subject to a variety of conflicting interpretations, a full trial on the merits is normally the only way to separate permissible motivations from those that merely mask unconstitutional actions.

## II. PLAINTIFF'S FIRST AMENDMENT CLAIMS

■ We have no difficulty concluding that the evidence presented to the district court is insufficient to warrant summary judgment on behalf of defendants. We begin with the settled premise that zoning decisions may not constitutionally be made for the purpose of restricting protected first amendment speech, including that which is sexually explicit.[4] *See generally Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1347 (9th Cir.1982). Consequently, federal courts strictly scrutinize zoning decisions that impinge on first amendment rights. *See generally Young v. American Mini Theatres,* 427 U.S. 50, 56 & n. 12, 96 S.Ct. 2440, 2445 & n. 12, 49 L.Ed.2d 310 (1976); *Interstate Circuit, Inc. v. Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); *Ebel v. City of Corona,* 698 F.2d 390, 392 (9th Cir. 1983). *Cf. Harper v. Virginia Board of Elections,* 383 U.S. 663, 670, 86 S.Ct. 1079, 1083, 16 L.Ed.2d 169 (1966). Under the strict scrutiny standard, zoning decisions

aimed at regulating unprotected activities that incidentally limit free expression are valid only if justified by a compelling state interest. *Young,* 427 U.S. at 56 n. 12, 96 S.Ct. at 2445 n. 12; *Ebel,* 698 F.2d at 392.

Thus, summary judgment is proper in this case only if, viewing the evidence in the light most favorable to plaintiffs, it can be said as a matter of law that the purpose of the zoning decisions was to serve a compelling governmental interest unrelated to the suppression of free expression. *Kuzinich,* 689 F.2d at 1348–49. In addition, the incidental restriction on first amendment freedoms can be "no greater than is essential to the furtherance" of the governmental interest. *Young,* 427 U.S. at 79–80, 96 S.Ct. at 2457 (Powell, J., concurring). Under this legal framework and the facts presented here, summary judgment for defendants is inappropriate.

■ To begin with, the deposition testimony of one of the principal defendants indicates that the primary purpose of the City Council's zoning decision was to prevent plaintiffs' theater from operating in Pocatello. Defendant Billmeyer's deposition testimony indicates that he, in his capacity as Pocatello's mayor, called the September 2nd Council meeting "to see what the City Council could do about getting the [plaintiffs'] Gallery Theater out of Pocatello." And defendant Ellis, the City's building inspector, candidly admitted in deposition testimony that he was instructed by Mayor Billmeyer to deny the building permit when plaintiffs applied for one. Ellis followed these instructions eight days later when plaintiffs' application was finally submitted.

In addition to these statements, the extraordinary nature of the City Council's de-

---

4. Defendants have never alleged that the entertainment offered at plaintiffs' theatre is obscene under *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), or otherwise unprotected by the first amendment. It is, of course, clear that free expression intended for entertainment purposes is generally entitled to the full panoply of first amendment protections. *See, e.g., Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2180–

81, 68 L.Ed.2d 671 (1981) (first amendment safeguards apply to live nude dancing because "[e]ntertainment, as well as political and ideological speech, is protected."); *Winters v. New York,* 333 U.S. 507, 510, 68 S.Ct. 665, 667, 92 L.Ed. 840 (1948) ("The line between the informing and the entertaining is too elusive for the protection of th[e] basic right [of free speech].").

cision-making process also casts suspicion on its motives. The September 2nd meeting was held before plaintiffs had even applied for a building permit for the theater. City Manager Charles Moss, who attended that meeting, recalled that the Council's purpose was to decide whether or not plaintiffs' theater would be permitted to operate at its new location. Defendant Councilwoman Boe testified that she could not "recall any other time" during her tenure on the Council when a meeting was held to deny a building permit before an application had been submitted. Indeed, Boe could not "think of any" other example where the Council instructed the City's building inspector to deny a permit application prior to its submission. Defendant Councilman Evans, who did not attend the September 2nd meeting, also testified that he could recall no other instances where the Council had instructed that a permit be denied prior to an application and that, under most circumstances, it would be improper for the Council to act in such a way.

Finally, the deposition testimony of several defendants indicates that the September 2nd meeting was the first time in the zoning code's six year history that the Council had adopted an interpretation of the term "amusement enterprises" that included indoor movie theatres. This testimony supports plaintiffs' allegation that the new zoning interpretation was specifically directed at their theatre.

When faced with a similar set of circumstances in *Ebel v. City of Corona*, 698 F.2d at 390, we did not hesitate to find that genuine issues of material fact existed and that plaintiff was entitled to a preliminary injunction. In *Ebel,* the plaintiff argued that the "real purpose" of the City's zoning ordinance restricting sellers of "sex-oriented material" was to "obstruct the exercise of her First Amendment rights." *Id.* In *Ebel,* as in this case, the plaintiff operated the only adult-oriented business in town. *Id.* In *Ebel,* as here, there was an explicit statement by a City official that the goal of the ordinance was to remove the plaintiff's business from the City. *Id.* And, just as in the present case, there were other indica-

tions in *Ebel* that the City's zoning decision was directed specifically at the plaintiff. *Id.* Under these circumstances, we found that "[t]he record provides enough evidence in support of [plaintiff's first amendment] claim to make the question one that does not lend itself to summary disposition. The claim presents fair ground for litigation." *Id.*

We reached a similar result in *Kuzinich v. County of Santa Clara,* 689 F.2d at 1345, where the Board of Supervisors enacted an emergency amendment to the zoning ordinances that made the operation of the plaintiff's adult businesses at their present locations illegal. 689 F.2d at 1347. Because "there was ... evidence from which it might be inferred that the basic purpose [of the zoning decision] was to control" the exercise of protected pornographic expression, 689 F.2d at 1348, we held in *Kuzinich* that summary judgment for the defendants was inappropriate.

A zoning decision that has as a purpose the restriction of protected first amendment freedoms cannot survive strict constitutional scrutiny. From the evidence presented in this case, it is impossible to conclude that there is no genuine material dispute concerning the reasons motivating the Pocatello City Council's actions. Indeed, there appears to be substantial evidence—most of it provided by defendants themselves—that the City Council took the unusual steps of adopting a new interpretation of the zoning ordinance, and ordering that a building permit be denied before it was even applied for, in order to prevent plaintiffs from exercising their first amendment rights. Plaintiffs must be given the opportunity to explore fully the Council's motivations at trial.

Plaintiffs do not question the City Council's legal authority to interpret provisions of the zoning ordinance or to deny conditional use permits. What plaintiffs do allege is that the Council's zoning decisions had as a purpose the restriction of first

amendment rights.[5] Defendants are of course free to prove at trial that a compelling governmental interest, rather than a desire to curtail free expression, motivated their zoning decisions. *See, e.g., Young,* 427 U.S. at 56 n. 12, 96 S.Ct. at 2457 n. 12.

In granting summary judgment, the district court relied in part on the hearing the City Council held to consider the application for a conditional use permit. At this hearing the Council purportedly denied the application based on traffic and parking problems. However, if it is true, as plaintiffs allege, that the City Council actually made its decisions at the closed-door September 2nd meeting, then subsequent Council hearings and findings on potential traffic and parking problems are, at the least, suspect. We note that the first extensive hearing on the potential problems presented by plaintiffs' theater was conducted by the Board of Adjustments, and that Board decided that plaintiffs should be granted a conditional use permit. Only after the Board of Adjustments made its decision did the City Council—which plaintiffs allege had already decided the issues on September 2nd —hold its October 23, 1975 pre-election meeting to solicit the views of concerned individuals. Such a *post hoc* attempt to rationalize a previous decision is certainly an important factor in evaluating the Council's motives. *See, e.g., Peacock,* 694 F.2d at 648.

In any event, the justifications offered by the City Council must consist of more than "[c]onclusions alone." *Kuzinich,* 689 F.2d at 1348. Rather, there must be "a factual basis for the . . . Council's conclusion that this kind of [zoning] restriction will have the desired effect." *Young,* 427 U.S. at 71, 96 S.Ct. at 2452–53 [footnote omitted].

Even assuming that the desire to limit traffic and parking problems motivated the City Council's actions, the law requires that zoning decisions "restricting first amendment rights be narrowly drawn." *Kuzinich,* 689 F.2d at 1348; *see also Schad v. Borough of Mount Ephraim,* 452 U.S. 61, at 68, 101 S.Ct. 2176, at 2182, 68 L.Ed.2d 671 ("when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest."); *Young,* 427 U.S. at 56 n. 12, 96 S.Ct. at 2445 n. 12; *Ebel,* 698 F.2d at 393. Consequently, the City must show that plaintiffs' theater has a "different impact upon traffic . . . than other kinds of businesses have," *Kuzinich,* 689 F.2d at 1348, and that "an ordinance directed at traffic" or parking would not accomplish what the restriction on first amendment freedoms was intended to accomplish. *Id.*

The district court must therefore determine at trial whether a motivating factor in the zoning decision was to restrict plaintiffs' exercise of first amendment rights. *Ebel,* 698 F.2d at 393. If a motivating reason for the Council's actions was to prevent the theater from operating, then the zoning decision would violate the first amendment. Purposeful attempts to suppress protected expression are unconstitutional.[6] *Id; see also Kuzinich,* 689 F.2d at 1348–49. On the other hand, defendants' case will depend on proof that the zoning decisions were motivated by a desire to further a compelling governmental interest unrelated to the suppression of free expression. As we cautioned in *Ebel,* "the district court should make factual findings on the validity of the city's assertions of harm [to

---

**5.** We do not suggest that the Idaho state court was incorrect in concluding that the term "amusement enterprises" was susceptible to an interpretation that included movie theaters. Nor do we disagree that, as a matter of state law, the interpretation was a reasonable one. *See* note 3, *supra.* The issue here, however, is whether the Council's decision to interpret "amusement enterprises" for the first time at the September 2nd meeting was unconstitutionally motivated.

**6.** In light of our decision, we express no view on whether the City Council's actions may also have violated the fourteenth amendment's equal protection clause. *See, e.g., Ebel,* 698 F.2d at 393 ("If . . . the real purpose of the . . . ordinance was to run [plaintiff's] adult bookstore out of town, then the ordinance would violate . . . equal protection (because it was aimed at [plaintiff] )").

be prevented by zoning] and then closely scrutinize the [zoning] ordinance's relationship to prevention of the alleged harms." *Ebel,* 698 F.2d at 393; *see also Young,* 427 U.S. at 56 n. 12, 96 S.Ct. at 2445 n. 12.[7] Finally, in order for defendants to prevail, the court must find that other actions, such as ordinances dealing directly with parking and traffic, could not have prevented the harms involved. *Kuzinich,* 689 F.2d at 1348.[8]

### CONCLUSION

Because genuine issues of material fact remain to be resolved, the district court's grant of summary judgment for defendants is reversed and the case is remanded for trial on the merits.

WALLACE, Circuit Judge, concurring:

I concur in the result of the panel's decision. Under the controlling precedent in this circuit, the district court's granting of the defendants' summary judgment motion was improper. *Ebel v. City of Corona,* 698 F.2d 390 (9th Cir.1983). I cannot agree, however, with the majority's formulation of the legal standard to be applied by the district court on remand. In *Ebel,* we held that an ordinance was unconstitutional if its "real purpose" was to obstruct the exercise of protected first amendment rights. 698 F.2d at 393. Instead of following that clear and precise standard, the majority states that the district court must establish whether "a motivating factor" for the zoning decision was to restrict the exercise of first amendment rights. I see no reason for the refusal to follow the *Ebel* standard, especially without reconsideration en banc.

The majority attempts to overcome this deficit by limiting *Ebel.* *See* Majority Opinion at 1267 n. 7. It would be difficult to imagine a case with facts more similar to *Ebel* than this one. Both cases involved the use of restrictive zoning in an attempt to close the only adult-oriented business in town. The evidence of improper motivation that is recited in the majority opinion is clearly adequate to support a reversal of the summary judgment under *Ebel*'s "real purpose" standard. There is simply no need to formulate the new test set forth in the majority opinion.

Moreover, the majority's attempt to distinguish *Ebel* implicitly vitiates the useful-

---

**7.** *Ebel* deals with a much simpler question in a manner that is consistent with the test we have applied. In *Ebel* we thought it was enough to note that either the ordinance in question was adopted in order "to run [the] adult bookstore out of town" or it was not. We did not find it necessary to discuss the more complicated question of the mixed motives that are frequently present in first amendment cases. Unfortunately, most first amendment cases are not as simple as *Ebel.* Accordingly, it will usually be necessary to apply the "motivating factor" test that we apply here. However, the simpler *Ebel* test will be adequate in those cases where there is clearly only a single purpose motivating the legislative action and the court is confronted with an all or nothing question—whether, in fact, there was an intent to affect first amendment rights; if the answer is yes, the improper "real purpose" has been established.

**8.** Defendants suggest two alternative grounds for summary judgment. Both of these grounds were presented to the district court but were not mentioned or discussed in its memorandum disposition. Neither is sufficient to justify summary judgment for defendants.

First, defendants contend that *res judicata* bars plaintiffs' present action because the same issues have been litigated in state court. This court has already rejected this argument. In *Tovar v. Billmeyer,* 609 F.2d at 1293–94, we held that "[a] free and unreserved submission to the state court of all federal claims for complete and final resolution is necessary to bar return to the federal court." And, as we noted in *Tovar,* plaintiffs have consistently made an "explicit reservation of constitutional issues." *Id.* at 1293. Defendants' *res judicata* argument is thus without merit.

Second, defendants argue that they are absolutely immune from suit because they were acting in either a legislative or a judicial capacity. There is considerable doubt that defendants can properly characterize their actions as either legislative or judicial. In *Kuzinich,* for example, we held that a Board of Supervisors' order to County counsel to institute actions to abate plaintiff's adult-oriented businesses "was not a legislative act, but rather an executive one." 698 F.2d at 1350. Here, the record is far from complete as to precisely what action the Council took and in what capacity those actions were taken. Accordingly, this issue is not appropriate for resolution by summary judgment.

ness of the test we developed in that case. According to the majority, the *Ebel* test will be used only in cases involving a single purpose for the challenged legislative action. By the very nature of legislative actions, however, it seems inevitable that there will always be more than a single purpose for any action of a legislative body. If the clear, *Ebel* standard is inapplicable to the present case, I cannot conceive of a case to which it would apply.

Because I believe our court is bound by *Ebel* and because I cannot approve the needless formulation of new legal tests to be applied in cases that can be resolved under the existing precedent of this court, I do not join in the majority's opinion. In addition, I fear that application of the majority formulation will result in confusion, and could lead to incorrect results when a combination of motivating factors is involved in the formulation of government actions that impact on constitutional rights.