GOLDIE'S BOOKSTORE, INC., a California Corporation, Foreign Auto-Body Specialists, Inc., Jesse Walker, Plaintiffs-Appellees,

v.

The SUPERIOR COURT OF the STATE OF CALIFORNIA, Robbie Waters, Sheriff of Sacramento County, Joyce Russell Smith, Clerk of the Sacramento Superior Court, Lee J. Ghilarducci, Marshal of Sacramento County, Defendants,

and

Richard Levin and Emily Levin, Defendants-Appellants.

No. 83–2564.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1984.

Decided Aug. 3, 1984.

Jay-Allen Eisen, Sacramento, Cal., for plaintiffs-appellees.

Michael A. Duncheon, Hanson, Bridgett, Marcus, Vlahos & Stromberg, San Francisco, Cal., for defendants-appellants.

Before WRIGHT, HUG and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Richard and Emily Levin obtained a state unlawful detainer judgment against Goldie's Bookstore. After the state court denied its request for a stay of the judgment pending appeal, Goldie's brought a section 1983 action in federal court to challenge the constitutionality of the California statute making stays discretionary, and to seek a preliminary injunction against enforcement of the state court judgment. The Levins appeal from the district court's grant of a preliminary injunction, 589 F.Supp. 382, claiming that: 1) the district court should have abstained pursuant to the *Younger* doctrine, and 2) the district court abused its discretion by granting the preliminary injunction. We reverse.

FACTS AND PROCEDURE

Goldie's Bookstore ("Goldie's") is the sublessee of commercial property in Sacramento owned by Richard and Emily Levin ("the Levins"). In 1983, the Levins prevailed in an unlawful detainer action against Goldie's in California Superior Court, on the ground that the operative lease had expired. Goldie's sought a Superior Court order staying execution of the judgment pending appeal so that it would not have to vacate the premises. Under California Code of Civil Procedure section 1176 ("section 1176"), a tenant in possession appealing from an adverse unlawful detainer judgment is only entitled to a stay

if the trial court, in its discretion, grants one. The Superior Court denied the stay.

A week later, Goldie's filed a section 1983 action in federal court challenging the constitutionality of section 1176 and seeking a preliminary injunction against the execution of the judgment. The defendants in that action were the Superior Court of the State of California; Robbie Waters, Sheriff of Sacramento County; Joyce Russell Smith, Clerk of the Sacramento Superior Court; Lee J. Ghilarducci, Marshal of Sacramento County; and Richard and Emily Levin. The state court judgment was stayed by stipulation pending the hearing on the preliminary injunction.

Goldie's' constitutional claim was that section 1176 violates the equal protection clause because it treats parties appealing adverse unlawful detainer judgments differently from all other parties in possession. While Section 917.4 of the California Code of Civil Procedure grants to all non-tenant occupants of real property an *automatic* stay of an adverse judgment pending appeal, section 1176 places the grant of a stay to a tenant within the discretion of the trial court.

▆▆▆ The district court determined that *Younger* abstention was not warranted. Finding that the constitutional challenge to section 1176 presented a serious question and that the balance of hardships tipped sharply in Goldie's favor, the court granted a preliminary injunction preventing all de-

fendants from enforcing the Levins' state court judgment.[1] The Levins alone appeal from that grant.[2]

## DISCUSSION

### A. *The district court properly decided not to abstain.*

▆▆▆ The Levins first argue that the district court should have dismissed Goldie's' claim pursuant to the principles of federalism enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ("*Younger*"), and its progeny. The decision whether to abstain under *Younger* is reviewable *de novo*. *See Champion International Corp. v. Brown*, 731 F.2d 1406 (9th Cir.1984) (implicitly applying *de novo* standard of review).

The Federal Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a state court ...." 28 U.S.C. § 2283 (1978). However, civil rights action under section 1983 are among the exceptions to the Act that have been "expressly authorized by Act of Congress." *Id.; see Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). As the Supreme Court said in *Mitchum*, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, ... to protect the people from unconstitutional action under color of state law." *Id.* at 242, 92 S.Ct. at 2162.

---

1. At oral argument the issue arose whether the Levins, apart from the other defendants, had acted "under color of state law" so as to invoke the district court's subject matter jurisdiction under section 1983. In a recent case, we found subject matter jurisdiction where the private state litigant, the state court, and the state judge were the defendants in a section 1983 action brought to enjoin the enforcement of a state court judgment. *See White v. White*, 731 F.2d 1440 (9th Cir.1984). Citing *Miofsky v. Superior Court*, 703 F.2d 332, 335 (9th Cir.1983), for the proposition that district courts have subject matter jurisdiction over section 1983 suits even when the state action takes the form of state court proceedings, we drew no distinction between the private party seeking to enforce the state court judgment and the state parties

charged with enforcing that judgment. We similarly make no distinction here.

2. The Levins have standing to contest the grant of the preliminary injunction issued against the other defendants, even though those defendants have not appealed. In general, to have standing to appeal one must have been a party at the time judgment was entered and must be aggrieved by the decision being appealed. *See Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966 (9th Cir.1981). The Levins were clearly parties when the injunction was granted. The Levins are also aggrieved by the injunction against the other defendants. Even if the injunction is vacated as to the Levins, an injunction in effect against the Superior Court, the Sheriff, the Clerk, and the Marshall leaves the Levins powerless to enforce their state court judgment.

Even in section 1983 cases, however, the *Younger* doctrine may require a federal court to abstain from exercising its jurisdiction in certain actions when proceedings are pending in state court. In *Younger,* the Supreme Court first articulated the principle that a federal court should not interfere with an ongoing state criminal prosecution. The Court based its holding on two grounds: first, the general reluctance of equity courts to disrupt criminal proceedings, and second, notions of federal-state comity expressed as "Our Federalism." 401 U.S. at 43–44, 91 S.Ct. at 750–751.

The Court has not limited the application of the *Younger* doctrine to state criminal proceedings; on the other hand, it has refused to make any pronouncement that *Younger* applies to all civil cases. Most recently, in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) ("*Middlesex* "), the Court applied *Younger* to state bar disciplinary procedures. It articulated three requirements for the proper invocation of *Younger:* (1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions. *Id.* at 432, 102 S.Ct. at 2521. In this case, the first and third elements are satisfied. The only issue, therefore, is whether the state unlawful detainer proceedings implicate important state interests.

The *Middlesex* Court enumerated various civil proceedings in which a state might have a vital interest. The first illustration was a proceeding bearing a close relationship to a criminal proceeding, such as a nuisance abatement. The second illustration was a proceeding necessary for the vindication of important state policies, such as a civil proceeding for the recovery of welfare payments fraudulently received. The third illustration was a proceeding necessary for the functioning of the state judicial system, such as a civil contempt proceeding. *Id.*

In *Miofsky v. Superior Court,* 703 F.2d 332 (9th Cir.1983) ("*Miofsky* "), we were faced with the question whether *Younger* should be extended to civil litigation in general. There the defendant in a state tort action brought a section 1983 suit contending that the state court's denial of his motion for a protective order violated his constitutional rights. In determining that abstention was not appropriate, we initially analyzed the extent to which the Court has applied *Younger* to noncriminal cases. We stated:

> In each of these cases, the state or an agent of the state was a party to the proceeding deemed insulated from federal court intervention. In addition, each of these civil suits bore similarities to criminal proceedings or otherwise implicated state interests vital to the operation of state government. In short, none of these cases authorizes our departure from the traditional distinction between civil and criminal proceedings as originally set forth in *Younger.* Indeed, in *Middlesex,* the Court carefully avoided the implication that the *Younger* doctrine applied indiscriminately to civil proceedings.

703 F.2d at 337 (footnote omitted). Thus, the Court has extended *Younger* beyond its application to criminal cases in only a limited area.

We concluded that Miofsky's state proceeding was "private tort litigation" not brought to "vindicate a vital state interest," *id.* at 338, and that *Younger* abstention was therefore not required. We emphasized that the federal courts have an obligation to exercise their jurisdiction, that the obligation is particularly weighty when the relief is sought under 42 U.S.C. § 1983, and that the doctrine of abstention is an extraordinary and narrow exception to that obligation. *Id.* at 338. *See also Champion International Corp. v. Brown,* 731 F.2d 1406 (9th Cir.1984) (where federal court jurisdiction based on preemption).

Here, as in *Miofsky,* we simply have litigation between two private parties. The Levins concede that the state dispute over

possession is a private one, but argue that Goldie's' federal constitutional attack on section 1176 clearly implicates the interests of the State of California. The *Younger* inquiry, however, focuses not on the potential federal proceedings, but on the ongoing *state* proceedings. *See Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521. The issues in the state proceedings are whether Goldie's' lease has expired and whether Goldie's should obtain a stay of an adverse unlawful detainer judgment pending appeal. These proceedings do not implicate important state interests of the type illustrated in *Middlesex*. The district court therefore properly refused to abstain from adjudicating Goldie's' claim.

**B.** *The district court improperly granted a preliminary injunction.*

■ The Levins' second argument is that the district court improperly granted Goldie's' request for a preliminary injunction. The grant of a preliminary injunction is reviewed for an abuse of discretion. *See Wilson v. Watt*, 703 F.2d 395, 398 (9th Cir.1983). A court may abuse its discretion by applying an incorrect preliminary injunction standard, by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation. *Id.*

■ A preliminary injunction properly issues upon a showing of either probable success on the merits and possible irreparable injury, or serious questions on the merits and a balance of hardships tipping sharply in favor of the moving party. *See Ebel v. City of Corona*, 698 F.2d 390, 392 (9th Cir.1983). These are not two separate tests, but the outer reaches "of a single continuum." *Benda v. Grand Lodge of International Association of Machinists, etc.*, 584 F.2d 308, 315 (9th Cir.1978), *cert. denied*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). The district court found that Goldie's' constitutional challenge presented a serious question and that the balance of hardships tipped sharply in Goldie's' favor. Neither finding is legally sustainable.

*The Merits*

Section 1176 provides that "an appeal taken by the defendant [in an unlawful detainer action] shall not stay proceedings upon the judgment unless the judge before whom the same was rendered so directs." California Code of Civil Procedure § 1176 (1982). Goldie's asserts that the statute irrationally classifies unlawful detainer defendants differently from defendants in all other actions for the return of real property. In all other actions, namely where the possessory dispute is not between landlord and tenant and involves questions of *ownership*, a stay of judgment is automatic. *See* California Code of Civil Procedure § 917.4 (1980).

*Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), lends substantial guidance on the issue whether section 1176 violates the equal protection clause. In *Lindsey*, a class of tenants asked the Court to declare the Oregon Forcible Entry and Wrongful Detainer Statute ("FED") unconstitutional on its face. The tenants attacked three specific provisions: one requiring a trial within six days of service of the complaint; one limiting the litigable issues in an FED action; and one requiring that a tenant, before appealing an adverse decision, post a bond twice the amount of rent expected to accrue during the appeal. The Court upheld the first two provisions but struck down the double bond requirement as violative of the equal protection clause.

Because the Court found that the FED statute potentially applied equally to "all tenants, rich and poor, commercial and noncommercial," it applied the rational basis, rather than the strict scrutiny, equal protection analysis. *Id.* at 70, 92 S.Ct. at 872. Under that test, the statute fails "only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *Id.*, citing *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The ultimate question, therefore, was whether Oregon could validly single out "possessory disputes be-

tween landlord and tenant for especially prompt judicial settlement." *Id.* 405 U.S. at 71, 92 S.Ct. at 873.

The Court had no difficulty finding that the prompt resolution of landlord-tenant disputes concerning the possession of real property was a legitimate state objective, and that the early trial and issue simplification provisions were closely related to that end. *Id.* at 71–73, 92 S.Ct. at 873–874. The double-bond requirement, however, was invalidated as "unrelated" to a valid state objective. The Court found no legitimate reason for the requirement, and, in addition, determined that it adversely affected the right of the poor to appeal.

Goldie's relies on that portion of *Lindsey* invalidating the double bond requirement for the proposition that a restraint on the right to appeal cannot be justified by the state's interest in providing to landlords a speedy remedy for recovery of possession. The statute in this case, however, does not hinder the right to appeal in any way. It merely vests discretion in the trial court to stay enforcement of an adverse judgment *pending* appeal. Further, while the Oregon double bond provision adversely affected a sub-class of tenants, the poor, the statute here is absolutely neutral in its impact. Goldie's has not alleged that section 1176's discretionary feature has been used discriminatorily, either in general or in this case.

Because the statute here has no adverse impact upon a particular sub-class of tenants, Goldie's' only possible claim is that tenants as a class cannot be singled out for discretionary stay-of-judgment treatment. Section 1176, however, seems to fall squarely within the bounds permitted by *Lindsey.* The Court stated explicitly that the unique nature of the landlord-tenant relationship justifies special statutory treatment inapplicable to other litigants. *Id.* at 72, 92 S.Ct. at 873. "Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession ...." *Id.* at 73, 92 S.Ct. at 874. A discretionary stay-of-judgment

statute clearly promotes that valid state objective. Indeed, it appears eminently reasonable to accord to the state trial judge the discretion to determine which party— landlord or tenant—should remain in possession during the pendency of the appeal. Furthermore, the trial judge's decision, which is based on the tenant's likelihood of success on appeal and the balance of hardships between the parties, is subject to state appellate review. *See Mehr v. Superior Court of City and County of San Francisco,* 139 Cal.App.3d 1044, 189 Cal. Rptr. 138 (1983). An automatic stay in the landlord-tenant context would thwart completely the purpose of the unlawful detainer scheme: swift repossession. *See Barela v. Superior Court,* 30 Cal.3d 244, 254, 178 Cal.Rptr. 618, 636 P.2d 582 (1981) ("strong public policy interests in preserving the summary nature of the unlawful detainer proceeding").

Given the procedural posture of this case, we have no need to pass on the ultimate constitutionality of section 1176. On review of this preliminary injunction, we decide only whether the district court could properly conclude that Goldie's had presented a "serious question" on the merits. Because the likelihood of success on the merits is very slight, we conclude that it could not.

### The Equities

The district court's finding that the balance of hardships weighed heavily in Goldie's' favor was based on several factors, each of doubtful validity.

▬ First, the court found that Goldie's would suffer substantial economic injury if forced to remove its business from the premises. Mere financial injury, however, will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation. *See Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1202 (9th Cir.1980). Here, Goldie's' harm would be easily calculable and compensable in dam-

ages if the state court appeal were successful.

■ Second, the court determined that Goldie's would lose goodwill and "untold" customers. This finding, not based on any factual allegations, appears to be speculative. Speculative injury does not constitute irreparable injury. Wright and Miller, 11 *Federal Practice and Procedure* § 2948 at 436 (1973).

Third, the court reasoned that if Goldie's were evicted it would lose its first amendment right to disseminate adult books, films, and magazines in the immediate community. This case, however, does not implicate the first amendment, and the case relied upon by Goldie's, *Ebel v. City of Corona*, 698 F.2d 390 (9th Cir.1983), is inapposite. In *Ebel*, the plaintiffs challenged, on first amendment grounds, government action which was *intended* to suppress speech. *Ebel*, citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976), found that purposeful unconstitutional suppression of speech constitutes irreparable harm for preliminary injunction purposes. Unlike the plaintiff in *Ebel*, who offered evidence that the challenged ordinances were specifically aimed at her adult bookstore, Goldie's has not even attempted to prove that section 1176 has been intentionally utilized to infringe upon free speech. We cannot, therefore, sustain a finding of irreparable injury on first amendment grounds.

■ The district court, although it did not, could have relied on Goldie's' alleged deprivation of equal protection in its balance of hardships analysis. An alleged constitutional infringement will often alone constitute irreparable harm. *See* Wright & Miller, 11 *Federal Practice and Procedure* § 2948 at 440 (1973). In this case, however, the constitutional claim is too tenuous to support our affirmance on that basis.

Finally, in balancing the hardships, the district court undervalued the burden that a preliminary injunction would impose upon the Levins. "The only hardship which defendants will suffer is a delay in being able to redevelop this parcel, if such be their desire," the court declared. The delay occasioned by Goldie's' continued possession, however, could result in forgone opportunities, increased construction costs, and other hardships no less factual nor more speculative than those alleged by Goldie's. Given that delay is exactly what section 1176 seeks to prevent, an injunction in this particular case goes far beyond preserving the status quo.

None of the factors cited by the district court supports a finding that the balance of hardships tips sharply in Goldie's' favor. Goldie's' weak constitutional claim, coupled with its failure to prove irreparable injury, precluded the district court from granting a preliminary injunction.

## CONCLUSION

Although the district court properly decided not to abstain, its grant of a preliminary injunction must be reversed.

REVERSED.

EUGENE A. WRIGHT, Circuit Judge, dissenting in part and concurring in the result:

I concur in the result but not in the disposition of the abstention issue. In Part A of her discussion, Judge Nelson considers most of the significant cases and notes that, "The only issue, therefore, is whether the state unlawful detainer proceedings implicate important state interests." Majority Opinion at 5.

It seems to me that significant state interests are implicated. The California Supreme Court has expressly recognized that strong public policy interests exist in preserving the summary nature of unlawful detainer proceedings. *Barela v. Superior Court*, 30 Cal.2d 244, 178 Cal.Rptr. 618, 636 P.2d 582 (1981). The proceeding in state court challenged a statute that has been law in California for over one hundred years.

Disputes regarding real property are traditionally state concerns. The Supreme Court has favored abstention in civil cases where traditional state concerns are at

stake. *See Middlesex County Ethics Comm. v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). *See Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979).

Given the strong interests implicated here and the weakness of Goldie's section 1983 action, abstention seems proper here. The district court should have taken that route.