**LYDO ENTERPRISES, INC., et al.,**
Plaintiffs-Appellees,

v.

**CITY OF LAS VEGAS,**
Defendant-Appellant.

No. 83–1962.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1983.

Resubmitted Aug. 6, 1984.

Decided Oct. 23, 1984.

John H. Weston, Beverly Hills, Cal., for plaintiffs-appellees.

George F. Ogilvie, City Atty., Las Vegas, Nev., for defendant-appellant.

Before WRIGHT, CHOY, and POOLE, Circuit Judges.

POOLE, Circuit Judge:

The City of Las Vegas, Nevada appeals a preliminary injunction enjoining it from enforcing a zoning ordinance restricting the location of "sexually oriented businesses." The ordinance, enacted in 1978, prohibits all "sexually oriented businesses" from areas within 1,000 feet of any other sexually oriented business, church, school, park or playground, or in areas zoned other than C–2, C–M, and M. LVMC § 19.74.030. All such prohibited businesses existing as of April 16, 1978, were given five years to comply. LVMC § 19.74.040.

The appellees, Lydo Enterprises Inc., et al., ("Lydo"), operate bookstores and theaters that exhibit and disseminate sexually oriented materials. Lydo received notice from the City on November 12, 1982, that they were a non-conforming use and must cease operation before April 16, 1983, or face possible criminal and civil sanctions. On April 6, 1983, Lydo sought and obtained a temporary restraining order prohibiting enforcement of the ordinance. A prelimi-nary injunction was issued on April 22, 1983, and the City appealed.

On appeal, we found the April 22, 1983, injunctive order failed to state adequately what conduct it prohibited, and the reasons for its issuance. By order of May 8, 1984, 735 F.2d 1370, we remanded to the district court for the limited purpose of complying with the specificity requirements of Federal Rule of Civil Procedure 65(d). An order of the district court entered December 8, 1983, was transmitted to this court on May 16, 1984. We find the December 8 order satisfies Rule 65(d), but we now vacate the preliminary injunction because we agree with appellants that the district court abused its discretion in entering that order.

## I.

An order granting a preliminary injunction will be reversed on appeal only if the district court abused its discretion or based its decision on an erroneous legal principle. *Humboldt Oil Co., v. Exxon Co., U.S.A.*, 695 F.2d 386, 387 (9th Cir. 1982); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980).

This circuit has determined that a preliminary injunction should be issued upon a clear showing of either

(1) probable success on the merits *and* possible irreparable injury *or* (2) sufficiently serious questions going to the merits to make them fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Ebel v. City of Corona*, 698 F.2d 390, 392 (9th Cir.1983) (citing *Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779, 781 (9th Cir.1976) (emphasis in original). These "are not really two entirely separate tests, but they are merely extremes of a single continuum." *Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

Traditionally, a preliminary injunction is an equitable remedy granted where the

moving party shows, 1) a likelihood of success on the merits, 2) a possibility of irreparable injury if the preliminary injunction is not issued, 3) a balance of hardships tipping decidedly in its favor; and 4) in some cases that granting the preliminary injunction will be in the public interest. *See Los Angeles Memorial Coliseum Comm'n*, 634 F.2d at 1200; *Sierra Club v. Hathaway*, 579 F.2d 1162, 1167 (9th Cir.1978).

The district court held that a preliminary injunction was appropriate because the balance of hardships tipped decidedly in Lydo's favor. The court said that enforcement of the ordinance would result in irreparable harm to Lydo's First Amendment rights and Lydo would suffer the financial burden of relocating if the bookstores and theaters were closed. On the other hand, the trial court concluded, the City showed no substantial interest in enforcement and no specific instances of harm while Lydo's First and Fourteenth Amendment claims presented serious litigation questions.

## II.

■ We disagree with the trial court's conclusion. An injunction causes harm by preventing the City from enforcing its ordinance. Zoning ordinances are presumptively valid and local governments have broad power to zone and control land use. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). *Cf. Erznoznik v. City of Jacksonville*, 422 U.S. 205, 215, 95 S.Ct. 2268, 2275, 45 L.Ed.2d 125 (1975) (The governmental interest in enforcement of an ordinance has less weight when a classification in the ordinance turns on the content of speech.). "[T]he city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976) (plurality opinion). The effect of an injunction forces the City to accept what may be the continued blighting of its business and residential neighborhoods resulting from the concentration of these sexually oriented businesses.

On the other hand, without the court's restraint, Lydo's business would be closed immediately at its present location. However, Lydo has presented nothing to indicate that adequate relocation sites are not available. Assuming such sites exist, Lydo would still have to bear the costs of relocation and some loss of income if required to move. Immediate closure of an existing business clearly constitutes some hardship. That hardship, however, is primarily economic in nature.

■ Purely monetary injuries are not normally considered irreparable. *Los Angeles Memorial Coliseum Comm'n*, 634 F.2d at 1202. In *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court held that

temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.... "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Id.* at 90, 94 S.Ct. at 953 (quoting *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir. 1958)). If Lydo ultimately prevails it may well fully recover damages for any losses caused by closure of its business.

■ In assessing the relative hardship to the parties and the history of their dilemma, we are mindful that for reasons unexplained, Lydo delayed five years before taking any action, which, if commenced sooner, might have avoided the threat of immediate closure. A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief. *Gianni Cereda Fabrics, Inc., v. Bazaar Fabrics, Inc.*, 335 F.Supp. 278, 280 (S.D.N.Y.1971).

A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action ....

*Gillette Co. v. Ed Pinaud, Inc.*, 178 F.Supp. 618, 622 (S.D.N.Y.1959); *accord Manhattan State Citizens' Group, Inc. v. Bass*, 524 F.Supp. 1270, 1275–76 (S.D.N.Y. 1981); *Continental Oil Co. v. Crutcher*, 434 F.Supp. 464, 471–72 (E.D.La.1977). We would be loath to withhold relief solely on that ground, but we do give that fact consideration in measuring the claim of urgency.

The Las Vegas ordinance was enacted in 1978. Appellees neither challenged the legislation nor attempted to find complying relocation sites. After receiving personal notice in November, 1982, that they would have to move by mid-April, they took no steps until ten days before the deadline when for the first time they sought a temporary restraining order. Despite abundant time and opportunity for gathering information in support of challenge to the ordinance, appellees presented the court no preliminary data regarding the availability of alternative locations. In support of their claim of hardship appellees simply offered affidavits asserting that they know of no places to relocate. Given this history and the further indication that the prospective injury consists primarily of the financial loss and costs involved in moving and reopening elsewhere, the balance of hardships is not seen decidedly to tip in appellees' favor. We therefore will examine the other claims of injury.

■ The district court found the possibility of irreparable injury in potential violations of appellees' First Amendment rights. Any loss of First Amendment freedoms, even briefly, can constitute irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). Because we disagree with the court's conclusion that Lydo has made a showing that First Amendment freedoms are in fact violated by the ordinance, we cannot affirm a finding of irreparable injury on this basis.

Lydo raises several First Amendment challenges to the ordinance. First, they contend that the ordinance is unconstitutional because it places a substantial limit on the number of adult businesses in the City and thereby impermissibly restricts access to constitutionally protected speech. It is uncontested that the communications at issue here are protected speech. *See Schad v. Borough of Mount Ephraim*, 452 U.S. at 65–66, 101 S.Ct. at 2180–81. Protected speech, however, is not totally free from regulation. A plurality of the Supreme Court in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), upheld a Detroit zoning ordinance regulating the locations of adult theaters because the Court found a substantial governmental interest and a concomitant "slight" burden on First Amendment rights. *Id.* at 71 & n. 35, 96 S.Ct. at 2453 & n. 35. The result would have been quite different if the ordinance had "the effect of suppressing, or greatly restricting access to, lawful speech." *Id.* at n. 35; *Schad v. Borough of Mount Ephraim*, 452 U.S. at 71–72, 101 S.Ct. at 2184–2185.

Lydo argues that the Las Vegas ordinance differs from that in Detroit in three respects: 1) Detroit exempted preexisting uses, Las Vegas does not; 2) Detroit prohibited new adult facilities only if they would have been within 1000 feet of *two* other regulated facilities, Las Vegas limits this to *one;* 3) Las Vegas permits adult businesses only in three zones, whereas Detroit dispersed the facilities. Lydo also argues that the ordinance places a substantial restriction on access to protected speech because twelve of the eighteen existing adult businesses would have to relocate immediately.

■ The difficulty with Lydo's position is that they made no showing regarding the availability of relocation sites. Therefore, there was no record upon which the court on preliminary injunction, nor we on this appeal, could find that the ordinance creates a substantial restriction on protected speech. Lydo's case for a preliminary injunction is based on conjecture. Merely showing that the ordinance requires the businesses to relocate and differs slightly from the Detroit ordinance is not enough to justify an inference of irreparable injury to

First Amendment rights. Nor do such facts raise a serious litigation question whether the ordinance suppresses or restricts access to speech.

Lydo's second challenge to the ordinance, which the district court accepted, is that the legislation is unconstitutional on its face because the City cannot show a substantial governmental interest unrelated to the suppression of free expression. *See Schad v. Borough of Mount Ephraim,* 452 U.S. at 67–70, 101 S.Ct. at 2181–2184; *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). A challenge of facial unconstitutionality requires a determination that the ordinance's inevitable effect belies its asserted justification and that it cannot be applied in a valid manner. Las Vegas asserts that its ordinance was enacted to prevent the further blighting of business and residential communities and to protect property values. Lydo argues that the measure is actually designed to restrict access to sexually explicit materials. If the purpose and necessary effect are to exclude a substantial number of adult businesses, and thereby to suppress protected speech, Lydo might indeed have a case. But again, this depends upon the reasonable availability of relocation sites. Because Lydo has made no showing that such sites are limited, no serious constitutional question has yet been presented.

We distinguish *Ebel v. City of Corona,* 698 F.2d 390 (9th Cir.1983), cited by the district court as its authority for granting preliminary injunction. In *Ebel* we enjoined, pending trial on the merits, enforcement of a restrictive zoning ordinance which would have put out of business the only adult bookstore in town. We concluded that the forced relocation seemed to have been designed to harass the bookstore. Furthermore, plaintiff Ebel made a strong factual showing that the only purpose was to run the enterprise out-of-town. The Chairman of the Planning Commission testified at public hearings that the city would "remove the adult bookstore." Another Planning Commissioner also testified that he would like to have the bookstore out of the city. 698 F.2d at 393. Thus, the public record tended to reveal the legislation's real purpose. Lydo presents no similar evidence here. Nor does it otherwise appear that the Las Vegas ordinance is simply designed to harass the businesses. We do not speculate whether any such showing could be made for the case has not yet been tried. We consider here only whether sufficient evidence was presented to support a preliminary injunction.

Lydo also raises a Fourteenth Amendment Due Process Clause challenge on the ground of vagueness. They complain the ordinance lacks "quantitative modifers" indicating to what extent a business's sexually oriented trade brings it within coverage of the statute. Lydo argues that even a single showing of an adult film could transform a location into a sexually oriented business.

In *Young v. American Mini Theatres,* the Supreme Court rejected a similar vagueness argument. The Court held that whatever uncertainty might exist in the statute, it was clear that the parties to the litigation were covered. 427 U.S. at 58–59, 96 S.Ct. at 2446–2447. Here appellees, the owners and operators of adult bookstores and theaters, do not even question that their businesses are covered as sexually oriented. Moreover, the repeated use of the term "business" makes it clear that this ordinance is only meant to cover commercial operations.

Lydo's argument that the ordinance is invalid on the ground that no empirical findings were recited to justify its enactment is unpersuasive. Such an attack was dismissed in *Ebel*: "Enactment of a zoning ordinance is a legislative act, . . . and great latitude is given to legislative bodies in the procedures they may use in factfinding." *Ebel,* 698 F.2d at 392–93 (citations omitted). This argument also presents no serious litigation question.

## III.

In summary, we conclude that the district court abused its discretion in finding that the balance of hardships tipped decid-

**1216**

edly in favor of Lydo and that Lydo had presented serious litigation questions so as to justify issuance of a preliminary injunction.

The immediate closure of appellees' businesses or their forced removal do entail economic injury, but if appellees ultimately prevail, that loss is calculable and compensable by an award of damages. That injury might have been greatly reduced or altogether obviated had appellees not waited five years to challenge the ordinance, although that delay is not the principal basis of our decision.

Despite appellees' urgings that the ordinance will have the effect of restricting access to constitutionally protected speech, they have yet made no showing to support this claim. A preliminary injunction is not justified when based mainly on speculation. The appellees' inchoate claims simply do not present serious litigation questions.

The order granting the preliminary injunction is reversed. Appellants shall have their costs on appeal.

REVERSED and REMANDED.